UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

QUINCY WASHINGTON                         CIVIL ACTION NO. 04-2539-P

versus                                    JUDGE STAGG

BURL CAIN, WARDEN, ET AL.                 MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury found Quincy "Lil Boo" Washington ("Petitioner") guilty of the second degree murder of Earl "June Bug" McDowell. The conviction and mandatory life sentence were affirmed on direct appeal. State v. Washington, 716 So.2d 936 (La. App. 2d Cir. 1998) writ denied, 734 So.2d 1229 (La. 1999). Petitioner filed two applications for post-conviction relief. Both applications were denied, and Petitioner then filed this petition for federal habeas corpus relief. His principal claims are lack of sufficient evidence and ineffective assistance of counsel. It is recommended, for the reasons set forth below, that the petition be denied.

**Sufficiency of the Evidence**

The evidence showed that Petitioner shot the victim six times shortly after the two men had a conversation. Some evidence suggested that the conversation may have been an argument. Petitioner pleaded self-defense based on a contention that the victim attacked him with a box cutter. Petitioner's first two habeas issues are (1) whether the evidence is sufficient to support the conviction and (2) whether the evidence was sufficient to overcome the self-defense plea.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

Petitioner invokes La.R.S. 15:438, which provides that a case based on circumstantial evidence must exclude every reasonable hypothesis of innocence. A federal habeas court does not, however, apply the Louisiana circumstantial evidence standard. Only Jackson need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314, n. 9 (5th Cir. 1992).

With respect to the self-defense claim, Louisiana law provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. R. S. 14:20(1). However, a person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R. S. 14:21.

Osie Thomas testified that he saw Petitioner and the victim talking outside Thomas's house. He then saw Petitioner leave and go toward Petitioner's house. At trial, Thomas

testified that the two men were not arguing, had been talking "all day just about," and that it was "mostly friendly talk when I seen them." Tr. 329-30. At a preliminary examination, however, Thomas had testified that "the boys was arguing" before Petitioner returned to his house. Tr. 105. Thomas later heard a shot fired, and he turned around to see Petitioner fire about four more shots at the victim, who had fallen to the ground after the first shot. Thomas said he did not see a weapon in the victim's hands. Tr. 330-31.

Charles Williams testified that he was a visitor at the home where the shooting occurred. He said he heard the victim say something to Petitioner like, "Do you know me, I'm from around here?" Petitioner responded that he did not know him, and "all of a sudden" something upset Petitioner, and he left. Petitioner later returned and resumed his conversation with the victim. Williams said he heard a gunshot. He saw a second shot fired, and the victim then hit the ground, "then a couple more shots went off" while the victim was on the ground. Williams said that he never heard the victim threaten Petitioner and never saw the victim with a box cutter. He also said he did not see a box cutter on the ground after the shooting. He added that he did not see anyone approach the body before the fire department arrived. Tr. 341-46.

Detective James Sorrells conducted a consensual search of Petitioner's mother's home and found no gun but did recover a box of .32 caliber cartridges in the room Petitioner shared with his brothers. Tr. 392-97. Detective Sorrells was present when Petitioner gave a recorded statement. The tape recording was played for the jury. Tr. 397-400. The court

reporter did not transcribe the contents of the recording, but Detective Sorrells' report states that Petitioner said that the victim had been smoking crack and said that he was going to rape Petitioner. Petitioner said that he tried to walk away, but the victim kept grabbing at him and eventually tried to "get him" with a box cutter. It was only then, Petitioner said, that he shot the victim. Tr. 55-57.

Dennis George testified that he was visiting the home where the shooting occurred when Petitioner and the victim got into an argument. George testified: "I heard June Bug hollering bout that he'll rape him, rape Quincy. And Quincy kept saying that you don't know me, you don't me, and all that there. That's what I heard, that's what I saw." Tr. 408-10. George said that he thought the men were just going to argue and go their separate ways, and he went home. George said he was at home at the time of the killing and that he neither saw nor heard the shots fired. He said he never saw the victim with a gun, box cutter or knife. Tr. 410-13. George said that Petitioner, who had been his lifelong friend, must have lied when he told police that George was present at the shooting and saw the victim armed with a weapon. Tr. 416.

Dr. George McCormick, Caddo Parish coroner, testified that the victim had been shot six times. One of the bullets severed his spinal cord in the neck and would have, alone, been fatal. The victim's blood alcohol level was .15% but no cocaine was found in his system, which indicated that he had not used cocaine within 12 hours of his death. Tr. 379-92. That

undermined Petitioner's claim that the victim had been smoking crack the day of the shooting.

The state appellate court reviewed the trial evidence in detail and assessed it under the proper Jackson standard. The court found sufficient evidence to support a conviction and to reject the self-defense theory. There was some evidence that the victim threatened Petitioner, but no witness testified that the victim committed an act in furtherance of the threat, and no witness supported Petitioner's claim that the victim was armed with a box cutter. No such weapon was found on the victim's body or in the area around the body, and several witnesses testified that no one went near the body before the fire department arrived. Petitioner's statement to the police was the only evidence to support the self-defense theory, and the jury was entitled to reject it based on the other evidence. The appellate court also observed that even if the victim had possessed a box cutter, there was no need for Petitioner to continue shooting him after he fell to the ground seriously wounded. Washington, 716 So.2d at 938-40.

The Louisiana appellate court recited and applied the Jackson standard on Petitioner's direct appeal. Thus, its decision was not "contrary to clearly established Federal law," so Petitioner can obtain habeas relief only if the state court's decision was an "unreasonable application" thereof. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).

Under the unreasonable application clause, a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme

Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the State court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the State court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

The state court's decision was entirely reasonable and based on a proper application of Jackson. Almost all of the evidence supported conviction and rejection of the self-defense theory. The jury's decision was not based on mere circumstantial evidence as suggested by Petitioner. Rather, it rested on solid, direct evidence. Any question about the credibility of the witnesses was to be made by the jurors and is generally beyond the scope of Jackson and habeas review. Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005). No relief is permitted on the first two issues.

**Dr. McCormick**

Petitioner contends that Dr. McCormick's testimony violated the Louisiana Code of Evidence because he testified that the location of Petitioner's aim and the number of times Petitioner fired the weapon showed a specific intent to kill (a critical element of the charged crime). Petitioner cites La. Code Evid. art. 701, but he likely intended to refer to Article 704,

which provides that an expert in a criminal case "shall not express an opinion as to the guilt or innocence of the accused."

Petitioner raised this issue, relying solely upon state evidentiary law, in a post-conviction application. Tr. 553. The trial court denied relief because the Second Circuit's decision on direct appeal did not include any finding that Dr. McCormick's testimony contained such an opinion. Tr. 585-6. The appellate court found that Petitioner had shown a sufficient need for the transcript of Dr. McCormick's trial testimony that he should be provided a copy within 30 days. The remainder of his application was denied. Tr. 615. Petitioner made other post-conviction requests for relief, but the court sees no indication that Petitioner pursued this issue further.

If Petitioner did not re-urge the issue after he obtained the transcript, he may not have exhausted his state court remedies. Furthermore, Petitioner has based this argument solely upon state law, so he could not have properly exhausted a *federal* claim as is necessary for habeas relief. Baldwin v. Reese, 124 S.Ct. 1347 (2004).

Finally, the court has reviewed Dr. McCormick's testimony and finds no support for Petitioner's assertion. Dr. McCormick said that the autopsy could not determine the order in which the shots were fired or the direction the bullets came from. Tr. 390-91. He never testified that any aspect of the autopsy or his investigation suggested that the shooter acted with specific intent to kill or inflict great bodily harm. Relief is not permitted on this issue.

**Ineffective Assistance of Counsel**

    **A. Introduction**

Petitioner asserted in a post-conviction application that his counsel was ineffective because he (1) did not request a jury instruction that the state had the burden of disproving self-defense, (2) should have discovered impeachment evidence concerning witness Charles Williams, and (3) failed to object to Dr. McCormick's alleged testimony about specific intent. Tr. 546-58. Petitioner's post-conviction application challenged some other aspects of counsel's performance, but only these three points are presented in the federal petition.

    **B. Self-Defense Instruction**

The trial judge charged the jury that Petitioner was presumed to be innocent until his guilt had been established beyond a reasonable doubt. Tr. 444-45. He charged the jury on the elements of second degree murder (and a lesser manslaughter charge), and he charged the jury regarding Louisiana's self-defense doctrine. He followed that with a reminder that a conviction required proof beyond a reasonable doubt of every essential element of second degree murder. Tr. 448-450. Petitioner argues that counsel should have insisted on an additional charge that the defense does not bear the burden of proving self-defense, but the state has to prove beyond a reasonable doubt that the homicide was not committed in self-defense. See State v. Adams, 446 So.2d 355, 366 (La. App. 3d Cir. 1984); State v. Fenner, 664 So.2d 1315, 1326 (La. App. 4th Cir. 1995).

The trial court rejected the claim, noting that the charges given reflected an accurate instruction on self-defense and that the conviction had withstood a sufficiency of the

evidence challenge on direct appeal. Tr. 583-84. The appellate court, however, agreed with Petitioner that it was error for counsel not to request the charge at issue. Nevertheless, the court held that the failure did not result in prejudice because the evidence was overwhelmingly against self-defense. Tr. 615-16.

The underlying claim of ineffective assistance requires a showing of deficient performance and prejudice. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Habeas relief is not available unless the state court's adjudication of the claim was an unreasonable application of Strickland. Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). Relief is not permitted under that standard unless the federal court believes that the state court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). The state court's decision was entirely reasonable in light of the lack of evidence to support the self-defense claim. There is no reason to believe that the result of the trial might have been different had counsel requested and obtained the additional jury instruction.

**C. Charles Williams**

Petitioner asserted in his post-conviction application that witness Charles Williams was receiving mental disability benefits from the government at the relevant times and that counsel should have discovered this information by investigation and used it to impeach Williams. Tr. 551-52. The trial court rejected the claim for lack of factual foundation or articulation of a reason that counsel should have known to investigate the witness's mental stability. Tr. 584-85. The appellate court observed that Petitioner had presented "no

evidence to support his claims regarding the alleged mental instability" of Williams, so the claim was without merit. Tr. 616.

Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 104 S.Ct. at 2066. Petitioner has yet to articulate facts to back his assertion that Mr. Williams was mentally disabled or to describe the nature of that disability. The transcript of Mr. Williams' testimony does not indicate that he had any difficulty understanding and responding to the questions. Absent more than a bold, conclusory assertion on this issue, Petitioner has not shown that the state court's adjudication of this issue was an objectively unreasonable application of Strickland.

### D. Dr. McCormick

Petitioner argues that counsel should not have allowed Dr. McCormick to testify regarding specific intent. Tr. 553. The appellate court directed that Petitioner be provided a transcript of Dr. McCormick's testimony, but it also rejected this Strickland claim for lack of support in the record to substantiate the claim that Dr. McCormick testified regarding specific intent. Tr. 615-16. As noted above, the full transcript of the testimony is now in the record, and it contains no indication that Dr. McCormick testified in the manner suggested by Petitioner. There is no basis for faulting the state court's rejection of this Strickland claim.

**Cumulative Errors**

Petitioner urges that if none of the alleged errors at his trial individually rises to a level to require relief, the cumulative effect of the errors denied him a fair trial. The state points

out that Petitioner has not asserted this claim in the state courts so as to exhaust his remedies as required by Section 2254(b)(2).  Furthermore, federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors so infected the entire trial that the resulting conviction violates due process. Martinez Perez v. Dretke, 172 Fed. Appx. 76 (5th Cir. 2006), citing Derden v. McNeel, 978 F.2d 1453, 1457 (5th Cir.1992) (en banc).  Petitioner has not established any errors of constitutional dimension, so relief is not available under this theory.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied** and that Plaintiff's complaint be **dismissed with prejudice.**

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 5th day of October, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE